**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

NATHAN HUGHES, #428770,

                    Petitioner,                    Case Number: 2:08-CV-11353

v.                                                 HON. ANNA DIGGS TAYLOR

NICK LUDWICK,

                    Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Nathan Hughes, a state inmate currently incarcerated at the St. Louis

Correctional Facility in St. Louis, Michigan, has filed a *pro se* petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his convictions for first-degree

premeditated murder and felony firearm. For the reasons set forth below, the Court denies the

petition and denies a certificate of appealability.

**I.**

Petitioner's convictions arise from the shooting death of DeShaun Glenn on November

20, 2002, in the City of Detroit. That day, at approximately 7:00 p.m., DeShaun Glenn and

several friends, including Rickey Johnson, Kevin Johnson, and Charles Williams, were gathered

outside a gas station. Petitioner and several of his friends approached Glenn's group. Glenn and

Petitioner exchanged heated words. Glenn told Petitioner to go back to his own neighborhood.

Several witnesses, Rickey Johnson, Kevin Johnson, and Charles Williams, testified that

Petitioner responded by saying that someone would be shot that night. Petitioner and his friends

then left.

Rickey Johnson testified that when Petitioner returned to the gas station, he and Glenn again exchanged heated words. He testified that Glenn walked away from Petitioner, but Petitioner followed and then shot Glenn. Kevin Johnson similarly testified that Petitioner returned to the gas station and approached Glenn. Glenn attempted to flee, but Petitioner approached Glenn from behind and shot him.

## II.

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of first-degree premeditated murder and possession of a firearm during the commission of a felony. On March 23, 2005, he was sentenced to life imprisonment for the murder conviction and two years' imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

I.      The prosecutor's misconduct – in effect, swearing himself as a witness to the contents of a police report not otherwise admitted in evidence – denied Nathan Hughes a fair trial and violated his Sixth Amendment right to confront and cross-examine the maker of the report.

II.     Defendant-appellant's Fifth and Fourteenth Amendment rights under the United States Constitution were violated by egregious prosecutorial misconduct, which denied defendant a fair trial and due process.

III.    Defendant-appellant's Sixth and Fourteenth Amendment rights under the United States Constitution were violated when his trial counsel was ineffective.

IV.     Defendant-appellant's Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution were violated when there was insufficient evidence presented by the State to sustain a conviction on first-degree murder.

The Michigan Court of Appeals affirmed his conviction. *People v. Hughes,* No. 261895

(Mich. Ct. App. Oct. 19, 2006).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Hughes*, No. 132666 (Mich. March 26, 2007).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the following claims:

I.      Petitioner is entitled to a new trial because his Fourteenth Amendment due process rights were denied because the prosecutor improperly introduced a mug shot at trial and introduced improper character evidence by referring to petitioner's brother's arrest.

II.     Petitioner is entitled to a new trial because his Sixth Amendment rights to the effective assistance of counsel were denied because counsel failed to investigate, prepare, seek assistance of a private investigator, present any witnesses on petitioner's behalf, and request a jury instruction regarding evidence of flight in the case.

III.    Petitioner was denied his due process rights under the Fourteenth Amendment because the evidence was insufficient to convict him of first-degree murder.

IV.    Petitioner was denied his due process rights under the Fourteenth Amendment when the prosecutor testified to the contents of a police report not otherwise admitted in evidence.

## III.

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable
         determination of the facts in light of the evidence presented in the
         State court proceedings.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a

petitioner's claims unless the state court's decision was contrary to or involved an unreasonable

application of clearly established federal law.  *Franklin v. Francis*, 144 F.3d 429 (6th Cir. 1998).

Additionally, this Court must presume the correctness of state court factual determinations.  28

U.S.C. § 2254(e)(1)[1]; *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We

give complete deference to state court findings unless they are clearly erroneous").

     The United States Supreme Court has explained the proper application of the "contrary

to" clause as follows:

     A state-court decision will certainly be contrary to [the Supreme Court's] clearly
     established precedent if the state court applies a rule that contradicts the
     governing law set forth in our cases. . . .

     A state-court decision will also be contrary to this Court's clearly established
     precedent if the state court confronts a set of facts that are materially
     indistinguishable from a decision of this Court and nevertheless arrives at a result
     different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

     With respect to the "unreasonable application" clause of § 2254(d)(1), the United States

Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the

"unreasonable application" clause when "a state-court decision unreasonably applies the law of

---

[1]     28 U.S.C. § 2254(e)(1) provides, in pertinent part:

         In a proceeding instituted by an application for a writ of habeas
         corpus by a person in custody pursuant to the judgment of a State
         court, a determination of a factual issue made by a State court shall
         be presumed to be correct.

this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11.

## IV.

### A.

In his first and fourth claims for habeas corpus relief, Petitioner argues that he was denied his right to a fair trial by the prosecutor's misconduct. Specifically, he argues that the prosecutor attacked his character by showing a mug shot photograph of Petitioner and by repeatedly referring to the fact that Petitioner's brother had been arrested on the night of the shooting and improperly referring to police reports not admitted into evidence.

On habeas review, claims of prosecutorial misconduct are reviewed deferentially. *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir.2006). "[T]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir.2006) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)). "Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally

unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999).

To determine whether the prosecutor's alleged misconduct rendered Petitioner's trial unfair, this Court undertakes a two-part analysis:

> First, this court determines whether the prosecution's conduct or remarks were improper. If the answer is affirmative, then the court considers four factors to decide whether the improper acts were sufficiently flagrant to warrant reversal: (1) whether the evidence against the defendant was strong[;] (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally.

*Slagle,* 457 F.3d at 515-16.

First, Petitioner argues that the prosecutor introduced improper character evidence when he commented during closing argument that in his mug shot, introduced as part of a photo lineup shown to one of the witnesses, Petitioner looked menacing. The Michigan Court of Appeals held that the argument was improper but that it did not deprive Petitioner his right to a fair trial. The Michigan Court of Appeals reasoned that the jury was given a curative instruction that it could only base a verdict on properly admitted evidence and the evidence against Petitioner was abundant. The court concluded that based upon these factors, Petitioner failed to show that the prosecutor's isolated comments regarding his mug shot denied him his right to a fair trial.

Second, Petitioner argues that the prosecutor denied him a fair trial by deliberately eliciting from police officer Alfred Thomas information that Petitioner's brother had been arrested on the night of the shooting. The Michigan Court of Appeals held that the prosecutor did not engage in misconduct, reasoning in pertinent part:

> [T]he prosecutor elicited information that Thomas got a description of defendant, was looking for defendant and did not find defendant in the first location he

searched.  The prosecutor subsequently asked Thomas, "[w]hat did you do after you received that information and noticed that this individual would not be here at that location," to which Thomas responded, "I then um, checked a wider area . . . and located" defendant's brother, Daniel, who "was arrested on an unrelated charge."  After an objection to the fact that defendant and Daniel were brothers, the court asked the prosecutor to move on and the prosecutor finished his examination of Thomas by eliciting information that defendant was not present at his brother's house and could not be found.  Given that defendant was not found until he was extradited back to Detroit from Minnesota on September 25, 2004, and the parties had not yet stipulated to this fact, we conclude that the prosecutor's aforementioned question was not asked in an effort to elicit information that defendant's brother was arrested on an unrelated matter. . . . [T]he prosecution did not knowingly offer or attempt to elicit the potentially inadmissible evidence that defendant's brother was arrested on an unrelated charge. . . . Accordingly, the prosecutor's actions in this regard did not deny defendant his right to a fair and impartial trial, and therefore, defendant's prosecutorial misconduct argument . . . fails.

*Hughes*, slip op. at 3.

Although the prosecutor's comments regarding the mug shot may have been improper, this conduct was not flagrant such that it "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden*, 477 U.S. at 181.  The mug shot comment and the testimony that Petitioner's brother was arrested were isolated comments and any prejudice was slight.  Further, the evidence against Petitioner was very strong.  Thus, the Court finds that the Michigan Court of Appeals' conclusion that the conduct was not sufficiently flagrant such that it deprived Petitioner of his right to a fair trial was not contrary to or an unreasonable application of Supreme Court precedent.

Finally, Petitioner argues that the prosecutor improperly referred to police reports not in evidence when questioning police officer Barbara Simon regarding Rickey Johnson's testimony that he told police that, five to ten minutes before the shooting, Petitioner threatened to kill someone.  Officer Simon testified that Rickey Johnson did not mention that alleged threat to her.

The prosecutor then asked Officer Simon whether "that sort of statement that you were going to get shot appears in the other statement?" The question referenced a report by Officer Simon's partner, police Officer Al Newman, regarding interviews he conducted at the crime scene. Defense counsel objected to the question and the objection was sustained. Officer Simon did not respond to the prosecutor's question. The Michigan Court of Appeals, therefore, concluded that Petitioner was not prejudiced by the prosecutor's actions. *See Hughes*, slip op. at 2-3. The Michigan Court of Appeals also found no misconduct in the prosecutor's follow-up remark "I think everybody testified about that," and "no, everybody did." The Michigan Court of Appeals held that this also did not constitute misconduct:

> Taking the prosecutor's subsequent statements in context, we conclude that the statements are merely suggesting that the victim's friends already testified that defendant made the aforementioned threat, and not suggesting that the victim's friends told Newman about the aforementioned threat. Given that the victim's friends had testified that defendant made the aforementioned threat, the prosecutor's subsequent comments were truthful, and thus, we conclude that the comments did not prejudice defendant. Moreover, given that the trial judge subsequently instructed the jury that it could only base its verdict on properly admitted evidence and that the lawyers' statements, arguments, and questions were not evidence, the prosecutor's aforementioned question and comments did not deny defendant his right to a fair and impartial trial.

*Hughes*, slip op. at 3.

Petitioner has not shown that the state court's conclusion in this regard was contrary to or an unreasonable application of Supreme Court precedent. Moreover, the trial court judge carefully instructed the jurors that lawyers questions, statements and arguments are not evidence. Therefore, based upon the "well-established presumption jurors follow their instructions," *Cyars v. Hofbauer*, 383 F.3d 485, 493, (6th Cir. 2004), the Court finds that the prosecutor's question and subsequent statements did not deprive Petitioner of a fair trial.

**B.**

Next, Petitioner argues that habeas relief is warranted because he was denied his Sixth

Amendment right to the effective assistance of counsel. Specifically, he argues that counsel

failed to investigate, prepare, seek assistance of a private investigator, present any witnesses on

Petitioner's behalf, or request a jury instruction regarding evidence of flight in the case.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-

pronged test for determining whether a habeas petitioner has received ineffective assistance of

counsel. First, a petitioner must prove that counsel's performance was deficient, which "requires

a showing that counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed by the Sixth Amendment." *Id.* at 687. The Supreme Court has "declined to articulate

specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he

proper measure of attorney performance remains simply reasonableness under prevailing

professional norms.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Strickland*, 466 U.S.

at 688; additional internal quotations omitted). However, when assessing counsel's

performance, the reviewing court should afford counsel great deference. *Strickland*, 466 U.S. at

689 (observing that "[a] fair assessment of attorney performance requires that every effort be

made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the

time" and that a convicted person who seeks to criticize his attorney's performance "must

overcome the presumption that, under the circumstances, the challenged action 'might be

considered sound trial strategy'").

Second, a petitioner must show that counsel's deficient performance prejudiced

petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

Petitioner argues that counsel failed to investigate, prepare, seek assistance of a private investigator, or present any witnesses on Petitioner's behalf.

> [D]ecisions made by trial counsel after "less than complete investigation," . . . "are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."

*Brown v. Smith*, 551 F.3d 424, 430 (6th Cir. 2008), *quoting Strickland*, at 690-91.

The Michigan Court of Appeals held that counsel was not ineffective in failing to investigate or prepare a defense on Petitioner's behalf. The court of appeals reasoned, in relevant part:

> To establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *People v. Toma*, 462 Mich. 281, 302-03; 613 N.W.2d 694 (2000). To show that counsel's performance was below an objective standard of reasonableness, a defendant must overcome the strong presumption that his counsel's actions constituted sound trial strategy under the circumstances. *Id.* at 302. Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which a court will not review with the benefit of hindsight. . . . . The failure to make a reasonable investigation can constitute ineffective assistance of counsel.

> We reject defendant's arguments that he was denied his constitutional right to the effective assistance of counsel when his trial counsel failed to request funds to have a private investigator appointed to question all of the individuals who witnessed the event in question, and failed to present any witnesses or a viable defense on defendant's behalf. The evidence indisputably established that Rickey, Kevin and Kelvin were present when defendant shot the victim. Rickey and Kevin testified and defense counsel did his best to defend defendant by effectively cross-examining both witnesses by impeaching their testimony and, in

turn, attempting to establish that defendant's actions were not deliberate or premeditated. Defense counsel specifically questioned Rickey's testimony by establishing that his written statement did not contain any information regarding the fact that defendant threatened to kill someone approximately ten minutes prior to the shooting when he reportedly relayed the theat to police. Defense counsel specifically impeached Kevin's testimony by establishing that he never gave a statement to the police. Thus, we conclude that the record reflects that defense counsel adequately investigated the police reports and, in turn, adequately cross-examined the two eyewitnesses that testified. Therefore, we conclude that defendant's performance in this regard did not fall below and objective standard or reasonableness. Furthermore, defendant has failed to establish what witnesses defense counsel should have called to the stand and what those witnesses would have testified to that would have changed the outcome of the proceedings. Defendant has failed to rebut the presumption that defense counsel's decision not to present any witnesses on defendant's behalf was sound trial strategy. Moreover, defendant has failed to establish what additional information a private investigator could have discovered and how that information could have been used to change the outcome of the proceedings. Thus, defendant's arguments fail.

*Hughes*, slip op. at 4-5.

Petitioner fails to provide adequate support for his conclusory claim that his attorney should have called additional witnesses. He failed in his habeas petition to make any offer of proof as to what exculpatory testimony these witnesses may have provided. A conclusory claim, not supported by facts, will not entitle a petitioner to habeas corpus relief. *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir.1991). The record shows that defense counsel took reasonable steps to prepare for trial and attempted to rebut the prosecution's case by cross-examining witnesses and presenting a defense. The fact that trial counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. Accordingly, Petitioner fails to show that the state court's conclusion that this attorney was not ineffective in this regard was contrary to or an unreasonable application of *Strickland*.

Petitioner also argues that counsel was ineffective in failing to request a flight instruction. The murder occurred on November 20, 2002. Petitioner was not found until he was

extradited back to Detroit from Minnesota on September 25, 2004.  The prosecutor used the fact

of Petitioner's departure from Michigan and eventual extradition to argue that the jury could

infer Petitioner's guilt.  The Michigan Court of Appeals held that a flight instruction was

supported by the evidence in this case, but held that the failure to request the instruction was not

ineffective because the a flight instruction may have worked to Petitioner's disadvantage because

it may have highlighted to the jury that evidence of flight can show a consciousness of guilt.

Additionally, the Michigan Court of Appeals held that, even if counsel should have requested a

flight instruction, Petitioner was not prejudiced by the error given the overwhelming evidence

against him.

The Court finds that the state court's well-reasoned disposition of this claim is not

contrary to or an unreasonable application of *Strickland*.  Petitioner failed to establish that

counsel was ineffective in failing to request the instruction.  Additionally, the Court concurs with

the state court's finding that the omission of the instruction did not prejudice Petitioner.

## C.

In his third claim for habeas corpus relief, Petitioner argues that insufficient evidence was

presented to support his conviction for first-degree premeditated murder.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court established that the

standard of review for a sufficiency of the evidence challenge must focus on whether "after

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319

(emphasis in original).  Pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether

the state court's application of the *Jackson* standard was contrary to or an unreasonable

application of Supreme Court precedent. In making this determination, this Court must afford

the state court's findings of fact a presumption of correctness unless it is established by clear and

convincing evidence that the factual determination in the state court was erroneous. 28 U.S.C. §

2254(e)(1); *West v. Seabold*, 73 F.3d 81, 83 (6th Cir. 1996), *cert. denied*, 116 S. Ct. 2569 (1996).

The Michigan Court of Appeals held that sufficient evidence was presented to sustain the

murder conviction, reasoning, in relevant part:

> We view the evidence presented in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime charged were proven beyond a reasonable doubt. . . .
>
> The elements of first-degree premeditated murder are that the defendant killed the victim and that the killing was willful, deliberate, and premeditated. . . . Premeditation and deliberation require sufficient time to permit the defendant to reconsider his actions; they may be established by evidence of the prior relationship of the parties, the defendant's actions before the killing, the circumstances of the killing itself including the weapon used and the location of the wounds inflicted, and the defendant's conduct after the homicide. . . . Circumstantial evidence and reasonable inferences from the evidence can be sufficient to prove the elements. . . . This Court must afford deference to the trier of facts special opportunity and ability to determine the credibility of witnesses. . .
>
> Here, three eyewitnesses, Rickey Johnson (Rickey), Kevin Johnson (Kevin), and Charles Williams (Charles), testified that they were gathered by a gas station with the victim when defendant and his friends walked by and exchanged words with the victim and his friends. The three eyewitnesses all testified that before defendant and his friends walked away, defendant stated that somebody was going to get shot. Furthermore, the evidence establishes that approximately five to ten minutes after words were exchanged, defendant returned to the area, walked up to the victim, made a motion like he was going to punch the victim, and shot the victim in the back of the head, causing the victim's death. Furthermore, shortly after the shooting, Rickey picked defendant out of a photo lineup as the man who shot the victim. . . . Therefore, we conclude that, viewing the evidence presented in a light most favorable to the prosecution, a rational trier or fact could have found that defendant acted deliberately and with premeditation when he shot the victim, . . . and, accordingly, could have found that the essential elements of first-degree premeditated murder were proven beyond a reasonable doubt. . . . Therefore, there was sufficient evidence presented to support defendant's first-degree premeditated murder conviction.

*Hughes*, slip op. at 1-2.

Viewing the facts in the light most favorable to the prosecution, the evidence presented showed that Petitioner exchanged words with the victim and his friends, stated that someone was going to get shot, five to ten minutes later returned with a gun, and shot the victim. Petitioner has not shown that any of the factual determinations made by the court of appeals were erroneous. Therefore, this Court concludes that the Michigan Court of Appeals' decision that sufficient evidence was presented to sustain the conviction did not "result[] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, Petitioner is not entitled to federal habeas corpus relief with respect to this claim.

## V.

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that the petition does not state a claim upon which habeas relief may be warranted. Therefore, the Court denies a certificate of appealability.

## VI.

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas

relief on the claims contained in her petition

Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.


DATED: February 23, 2010                                  <u>**s/Anna Diggs Taylor**</u>
                                                         ANNA DIGGS TAYLOR
                                                         UNITED STATES DISTRICT JUDGE

---

### <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order of Dismissal was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on February 23, 2010.

Nathan Hughes, #428770
St. Louis Correctional Facility
8585 N. Croswell Road
St. Louis, MI 48880                               <u>s/Johnetta M. Curry-Williams</u>
                                                  Case Manager